**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| WADDELL & REED FINANCIAL, INC., | : **SECTIONS 14(a) AND 20(a) OF THE** |
| THOMAS C. GODLASKY, KATHIE J. | : **SECURITIES EXCHANGE ACT OF** |
| ANDRADE, SHARILYN S. GASAWAY, | : **1934** |
| JAMES A. JESSEE, KATHRINE M.A. | : |
| KLINE, DENNIS E. LOGUE, MICHAEL F. | : **JURY TRIAL DEMANDED** |
| MORRISSEY, PHILIP J. SANDERS, AND | : |
| JERRY W. WALTON, | : |
| | : |
| Defendants. | |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Waddell & Reed Financial, Inc. ("Waddell & Reed or the "Company") and the members Waddell & Reed board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Waddell & Reed by Macquarie Management Holdings, Inc. ("Macquarie") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on January 22, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Merry Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Macquarie, will merge with and into Waddell & Reed with Waddell & Reed surviving the merger and becoming a wholly owned subsidiary of Macquarie (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Waddell & Reed common share issued and outstanding will be converted into the right to receive $25.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Waddell & Reed stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Waddell & Reed stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice. The Company has hired Georgeson LLC as its proxy solicitor, with headquarters in New York, New York. Further, the closing of the Proposed Transaction will take place in the New York offices of Macquarie's legal advisor, Allen & Overy LLP.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the conduct at issue occurred in this County, and because Defendants transact business in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Waddell & Reed common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Thomas C. Godlasky has served as a member of the Board since July 2010 and Chairman of the Board since April 2018.

11. Individual Defendant Kathie J. Andrade has served as a member of the Board since March 2019.

12. Individual Defendant Sharilyn S. Gasaway has served as a member of the Board since July 2010.

13. Individual Defendant James A. Jessee has served as a member of the Board since July 2019.

14. Individual Defendant Kathrine M.A. Kline has served as a member of the Board since February 2020.

15. Individual Defendant Dennis E. Logue has served as a member of the Board since January 2002.

16. Individual Defendant Michael F. Morrissey has served as a member of the Board since July 2010.

17. Individual Defendant Philip J. Sanders has served as a member of the Board and Chief Executive Officer since August 2016.

18. Individual Defendant Jerry W. Walton has served as a member of the Board and since April 2000.

19. Defendant Waddell & Reed is incorporated in Delaware and maintains its principal offices at 6300 Lamar Avenue, Overland Park, Kansas 66202. The Company's common stock trades on the New York Stock Exchange under the symbol "WDR."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    <u>The Proposed Transaction</u>**

22.    Waddell & Reed, through its subsidiaries, provides investment management and advisory, investment product underwriting and distribution, and shareholder services administration to mutual funds, and institutional and separately managed accounts in the United States. The Company acts as an investment adviser for institutional and other private investors, and provides sub advisory services to other investment companies; and underwrites and distributes registered open-end mutual fund portfolios. It also offers fee-based asset allocation investment advisory products to advisors channel customers; distributes business partners' variable annuity products, and retirement and life insurance products to advisors channel customers; and sells life insurance and disability products underwritten by various carriers. The Company distributes investment products through its wholesale channel comprising other broker/dealers, various retirement platforms, and registered investment advisors, as well as through independent financial advisors; and markets investment advisory services to institutional investors directly or through consultants. Waddell & Reed was founded in 1937 and is based in Overland Park, Kansas.

23.    On December 2, 2020, Waddell & Reed announced that they had entered into a proposed transaction:

> OVERLAND PARK, Kan.--(<u>BUSINESS WIRE</u>)--Waddell & Reed Financial, Inc. (NYSE: WDR) today announced it has entered into a merger agreement with Macquarie Asset Management, the asset management division of Macquarie Group (ASX: MQG; ADR: MQBKY), under which Macquarie would acquire all of the outstanding shares of Waddell & Reed for $25.00 per share in cash representing total consideration of $1.7 billion.
>
> The transaction represents a premium of approximately 48% to the closing price of Waddell & Reed common stock on December 1, 2020, the last trading day prior to the transaction announcement, and a premium of approximately 57% to Waddell & Reed's volume-weighted average price for the last 90 trading days.

On completion of the transaction, Macquarie has agreed to sell Waddell & Reed Financial, Inc.'s wealth management platform to LPL Financial Holdings Inc. (Nasdaq: LPLA), a leading U.S. retail investment advisory firm, independent broker-dealer, and registered investment advisor custodian, and also enter into a long-term partnership with Macquarie becoming one of LPL's top tier strategic asset management partners.

As a result of the transaction, Macquarie Asset Management's assets under management are expected to increase to over $465 billion, with the combined business becoming a top 25[1] actively managed, long-term, open-ended U.S. mutual fund manager by assets under management, with the scale and diversification to competitively position the business to maintain and extend its high standards of service to clients and partners.

Through its subsidiaries, Waddell & Reed Financial, Inc. has provided investment management and wealth management services to clients throughout the U.S. since 1937. Today, investment products are distributed under the Ivy Investments brand, as well as through independent financial advisors associated with Waddell & Reed, Inc. As of September 30, 2020, Waddell & Reed Financial, Inc.'s asset management business had $68 billion of assets under management and its wealth management business had assets under administration of $63 billion.

Philip J. Sanders, Chief Executive Officer of Waddell & Reed Financial, Inc., said: "Over the past few years, we have been focused on leveraging our strong heritage as the foundation for transforming our firm into a more diversified and growth-oriented financial services enterprise. The long-term partnership between Macquarie and LPL as part of this transaction accelerates that transformation and ultimately will benefit our clients and independent financial advisors while delivering significant value to our stockholders."

Martin Stanley, Head of Macquarie Asset Management, said: "The addition of Waddell & Reed Financial, Inc. and our enhanced partnership with LPL will significantly increase our ability to grow and invest in our combined business for the benefit of our clients. Ivy Investments' complementary investment capabilities will provide diversification to Macquarie Asset Management's capabilities and client base. The consideration offered reflects the quality of Waddell & Reed's business and the future benefits of our partnership with LPL."

Shawn Lytle, President of Delaware Funds by Macquarie and Head of Macquarie Group in the Americas, added: "This transaction is an important step forward in our growth strategy for Delaware Funds by Macquarie. The acquisition of Waddell & Reed's asset management business and our partnership with LPL significantly strengthens our position as a top 25 U.S. actively managed, long-term, open-ended mutual fund manager across equities, fixed income and multi asset solutions."

Dan Arnold, President and Chief Executive Officer of LPL Financial, said: "Waddell & Reed advisors are highly experienced and well-respected throughout the industry. They are a terrific fit both culturally and strategically, and we welcome them to the LPL family. Looking ahead, we expect our capabilities and resources will benefit their practices and help them unlock additional value and growth. Additionally, we look forward to deepening our long-term partnership with Macquarie, which will help us preserve unique aspects of the Waddell & Reed advisor experience while also positioning us to explore additional long-term opportunities together."

The transaction has been approved by the Boards of Directors of Waddell & Reed Financial, Inc., Macquarie Group and LPL and is expected to close in the middle of 2021, subject to regulatory approvals, Waddell & Reed Financial, Inc. stockholder approval and other customary closing conditions.

***Advisors and Counsel***

J.P. Morgan Securities LLC served as lead financial advisor to Waddell & Reed Financial, Inc. Wells Fargo Securities, LLC also served as financial advisor and Norton Rose Fulbright US LLP served as lead counsel. RBC Capital Markets served as exclusive financial advisor and Allen & Overy served as lead counsel to Macquarie.

24.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Waddell & Reed's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Proxy Statement**

25.    On January 22, 2021, Waddell & Reed filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Waddell & Reed Financial Projections*

26.    The Proxy Statement fails to provide material information concerning financial projections by Waddell & Reed management and relied upon by J.P. Morgan in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Waddell & Reed management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate

8

management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning J.P. Morgan's Financial Analysis*

31. With respect to J.P. Morgan's *Sum-Of-The-Parts—Public Trading Multiples Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by J.P. Morgan in the analysis.

32. With respect to J.P. Morgan's *Sum-Of-The-Parts—Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by J.P. Morgan in the analysis.

33. With respect to J.P. Morgan's *Sum-Of-The-Parts—Discounted Cash Flow Analysis*, the Proxy Statement also fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of terminal growth rates of (0.5%) to 0.5% to the unlevered free cash flow of the Company's asset management business and 1.5% to 2.5% to the unlevered free cash flow of the Company's wealth management business; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.25% to 11.25% for the Company's asset management business and 9.75% to 11.75% for the Company's wealth management business, and (iv) the Company's estimated cash, liquid securities and total debt.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

34. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by J.P. Morgan and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Waddell & Reed within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Waddell & Reed, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Waddell & Reed, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Waddell & Reed, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 25, 2021

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*